UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CANDLE ROBERTSON-GRAY, o/b/o JEROME HARRIS, | CASE NO. 1:08CV172 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Candle Robertson-Gray ("Plaintiff"), acting on behalf of Jerome Harris, a minor, seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), discontinuing Harris' Supplemental Security Income ("SSI"). ECF Dkt. #1. Plaintiff asserts that the Administrate Law Judge ("ALJ") erred in: (1) finding that Harris is not markedly impaired in moving about and manipulating objects; and (2) failing to develop a full and fair record. ECF Dkt. #14 at 6, 9. For the following reasons, the Court REVERSES the ALJ's decision IN PART, AFFIRMS it IN PART, and REMANDS this case for further factfinding, analysis, and articulation by the ALJ:

**I.    PROCEDURAL AND FACTUAL HISTORY**

On March 13, 2001, Plaintiff filed an application for SSI, alleging disability. Tr. at 88-90. Her application was denied initially and on reconsideration. *Id*. at 34-41. On July 25, 2003, the SSA found that Harris was disabled as of February 1, 2001 due to conduct disorder and selective mutism. *Id*. at 52. In September of 2004, the SSA reviewed Harris' case and determined that his period of disability ceased as of October 1, 2004 due to medical improvements. *Id*. at 53-61. On November 11, 2004, Plaintiff filed a request for reconsideration. *Id*. at 62-63. On June 28, 2005, a disability hearing officer found that Harris' medical condition had improved and consequently affirmed

termination of his benefits. *Id*. at 67-77. On September 1, 2005, Plaintiff filed a request for a hearing by an ALJ. *Id*. at 78-81.

On March 15, 2007, an ALJ conducted an administrative hearing, but continued the hearing until Plaintiff could obtain counsel. Tr. at 399-411. The hearing resumed on July 11, 2007. *Id*. at 412-51. At the hearing, Plaintiff and Harris were represented by counsel, and the ALJ received testimony from Harris, Plaintiff, and medical expert Cheryl Morrow-White, M.D. *Id*. On September 11, 2007, the ALJ issued a Notice of Decision - Unfavorable. Tr. at 10-28. On November 28, 2007, the Appeals Council denied Plaintiff's request for review. *Id*. at 5-7.

On January 19, 2008, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On June 19, 2008, Plaintiff filed a brief on the merits. ECF Dkt. #14. On August 19, 2008, Defendant filed a brief on the merits. ECF Dkt. #16. Plaintiff filed no reply.

## II. STEPS TO DETERMINING ELIGIBILITY FOR CONTINUATION OF SOCIAL SECURITY BENEFITS FOR A CHILD

The Commissioner shall review the continued eligibility for benefits of each individual who has not attained 18 years of age and is eligible for such benefits by reason of an impairment (or combination of impairments) which is likely to improve (or, at the option of the Commissioner, which is unlikely to improve). 42 U.S.C. §1382c(a)(3)(H)(ii)(I). A claimant who has been granted disability benefits is not entitled to a presumption of continuing disability. *Nierzwick v. Com'r of Social Security*, 7 Fed.Appx. 358, 361, 2001 WL 303522 at **1 (6th Cir. Mar. 19, 2001), unreported. Rather, the SSA follows a three-step process in reviewing continued eligibility for Social Security Benefits, as paraphrased below:

> **Step One.** The SSA must first determine whether there has been medical improvement in the claimant's condition(s). A medical improvement is any decrease in the medical severity of the claimant's impairment(s) which was present at the time of the most recent favorable decision[1] that the claimant was disabled or continued to be disabled. Although the decrease in severity may be of any quantity or degree, the

---

[1] The most recent favorable decision is the latest final determination or decision involving a consideration of the medical evidence and whether the claimant was disabled or continued to be disabled.

SSA will disregard minor changes in signs, symptoms, and laboratory findings[2] that obviously do not represent medical improvement and could not result in a finding that the claimant's disability has ended. A determination that there has been a decrease in medical severity must be based on changes (improvements) in the symptoms, signs, or laboratory findings associated with the claimant's impairment(s). However, some impairments are subject to temporary remissions, which can give the appearance of medical improvement when in fact there has been none. If the claimant has the kind of impairment that is subject to temporary remissions, the SSA will be careful to consider the longitudinal history of the impairment, including the occurrence of prior remissions and prospects for future worsenings, when the SSA decides whether there has been medical improvement. Improvements that are only temporary will not warrant a finding of medical improvement.

If there has been no medical improvement, the SSA will find that the claimant's disability continues, unless one of the exceptions to medical improvement described in paragraph (e) or (f) of 20 CFR § 416.994a applies.

> (i) If one of the first group of exceptions to medical improvement applies, the SSA will proceed to step 3.
>
> (ii) If one of the second group of exceptions to medical improvement applies, the SSA may find that the claimant's disability has ended.

**Step Two.** The SSA must determine whether the claimant's impairment(s) still meet or equal the severity of the listed impairment that it met or equaled before. If there has been medical improvement, the SSA will consider whether the impairment(s) that it considered at the time of the SSA's most recent favorable determination or decision still meets or equals the severity of the listed impairment it met or equaled at that time. In making this decision, the SSA will consider the current severity of the impairment(s) present and documented at the time of its most recent favorable determination or decision, and the same listing section used to make that determination or decision as it was written at that time, even if it has since been revised or removed from the Listing of Impairments. If that impairment(s) does not still meet or equal the severity of that listed impairment, the SSA will proceed to the next step. If that impairment(s) still meets or equals the severity of that listed impairment as it was written at that time, the SSA will find that the claimant is still disabled, unless one of the exceptions to medical improvement described in paragraphs (e) or (f) of 20 CFR § 416.994a applies.

> (i) If one of the first group of exceptions to medical improvement applies, the SSA will proceed to step 3.
>
> (ii) If one of the second group of exceptions to medical improvement applies, the SSA may find that the claimant's disability has ended.

**Step Three.** The SSA must determine if the claimant is disabled under the rules for determining eligibility in initial disability claims for children. In determining whether the claimant is currently disabled, the SSA will consider all impairments the claimant

---

[2] The terms "symptoms," "signs," and "laboratory findings" are defined in § 416.928. For children, the definitions of the terms symptoms, signs, and laboratory findings may include any abnormalities of physical and mental functioning that the SSA used in making its most recent favorable decision.

> now has, including any he or she did not have at the time of the SSA's most recent favorable determination or decision, or that the SSA did not consider at that time. The steps in determining current disability are summarized as follows:
>
>> (i) Does the claimant have a severe impairment or combination of impairments? If there has been medical improvement in the claimant's impairments, or if one of the first group of exceptions applies, the SSA will determine whether the claimant's current impairments are severe, as defined in § 416.924(c). If the claimant's impairments are not severe, the SSA will find that the claimant's disability has ended. If the claimant's impairments are severe, the SSA will then consider whether they meet or medically equal the severity of a listed impairment.
>>
>> (ii) Do the claimant's impairments meet or medically equal the severity of any impairment listed in appendix 1 of subpart P of part 404 of this chapter? If the claimant's current impairments meet or medically equal the severity of any listed impairment, as described in §§ 416.925 and 416.926, the SSA will find that the claimant's disability continues. If not, the SSA will consider whether it functionally equals the listings.
>>
>> (iii) Do the claimant's impairments functionally equal the listings? If the claimant's current impairments functionally equal the listings, as described in § 416.926a, the SSA will find that the claimant's disability continues. If not, the SSA will find that the claimant's disability has ended.

20 CFR § 416.994a(b)-(c); SSR05-03p. At step three, the claimant bears the burden of establishing disability. *See Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125, (6th Cir. 2003).

In order to *meet* a Listing, the child's impairment(s) must be substantiated by medical findings shown or described in the listing for that particular impairment. 20 C.F.R. § 416.925 (d)(emphasis added). In order to *medically equal* a Listing, a child's impairment(s) must be substantiated by medical findings at least equal in severity and duration to those shown or described in the listing for that particular impairment. 20 C.F.R. § 416.926(a)(emphasis added). In order to *functionally equal* a Listing, the child's impairment(s) must be of listing-level severity; *i.e.*, it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a)(emphasis added). The SSA assesses all relevant factors, including (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his medications or other treatment. 20 C.F.R. § 416.926a(a)(1)- (3). Further, the SSA considers how a child functions in his activities within six domains: "(i) Acquiring and using

information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

### III.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

### IV.  ANALYSIS

#### A.  EVIDENCE OF HARRIS ABILITIES TO MOVE ABOUT AND MANIPULATE OBJECTS

Plaintiff first contends that the ALJ's finding that Harris has less than marked limitations in the functional domain of "moving about and manipulating objects" was not supported by substantial evidence. ECF Dkt. #14 at 8. Plaintiff indicates that Bender Gestalt testing[3] on August 30, 2004

---

[3] A Bender Gestalt test is "a psychological test used by neurologists and clinical psychologists to measure a person's ability to visually copy a set of geometric designs; useful for measuring visuospatial and visuomotor coordination to detect brain damage." Stedman's Medical Dictionary (27th. ed. 2000).

-5-

indicates that Harris had inadequate visual motor abilities and inadequate abilities for visual integration and hand-eye coordination.  *Id*. at 9.  Plaintiff argues that the ALJ improperly relied on the Medical Expert's opinion and failed to fully address the Bender Gestalt testing.  *Id*.

Defendant contends that this argument is waived because Plaintiff stated at the hearing that only three functional domains were at issue and the domain of moving about and manipulating objects was not one of them.  ECF Dkt. #16 at 7.  This argument is not well-taken because the ALJ specifically questioned the medical expert about moving and manipulating objects (Tr. at 440) and specifically addressed the issue in his decision (Tr. at 21, 27) without relying on or even mentioning waiver.  Issues not raised at the administrative level are deemed waived because, as a matter of policy, the administrative agency should have an opportunity to consider the issue before it is presented to the district court.  *See Hughes v. Apfel*, 992 F.Supp. 243, 248 (W.D.N.Y.,1997) ("The purpose of the administrative waiver is to ensure that the agency has notice of the claims against it, and the opportunity to consider the matters raised.").  Accordingly, the ALJ's decision on the merits of the issue is appropriately subject to review by this Court.

On August 30, 2004, Jung K. Lee, Ph.D. performed a consultative psychological evaluation where he noted that Harris' responses to the Bender Gestalt test indicated that he had inadequate visual motor ability with an age equivalent between 9-6 and 9-11 years.  Tr. at 357.  Dr. Lee further noted that testing showed inadequate abilities for visual integration and eye-hand coordination, but no signs of organicity.  *Id*.  On October 8, 2004, reviewing physician Larry Kravitz opined that Harris suffered less than marked limitations in the abilities to move about and manipulate objects.  *Id*. at 363.  Dr. Kravitz reasoned that Plaintiff exhibited poor fine and gross motor skills, but no signs of organicity.  *Id*. at 363, 365.  At the administrative hearing, the ALJ asked Dr. Morrow-White for her opinion on Harris' limitations in the domain of moving about and manipulating objects.  *Id*. at 440.  Dr. Morrow-White opined that Harris suffered less than marked limitations because "We have the Bender Gestalt.  We haven't had anything since 2004."  *Id*.

The Court finds that the ALJ's decision with respect to Harris' functioning in the domain of

moving about and manipulating objects is not supported by substantial evidence. The ALJ did not expressly address the Bender Gestalt test. *See* Tr. at 21-22, 27. Rather, the ALJ relied on Dr. Morrow-White's opinion. *Id*. at 22. Defendant argues that Dr. Morrow-White and Dr. Kravitz both opined that Harris' Bender Gestalt results indicated less than moderate limitations, and those opinions are not contradicted. ECF Dkt. #16 at 7. However, neither Dr. Morrow-White's opinion nor Dr. Kravitz's opinion constitutes substantial evidence. First, neither Dr. Morrow-White nor Dr. Kravitz explained why the August 30, 2004 Bender Gestalt test should be interpreted as showing less than moderate restriction. Rather, both doctors simply stated that Harris had less than moderate limitations based upon his Bender Gestalt testing. *See* Tr. at 363, 440. Second, although Dr. Morrow-White stated that Harris did not have test results that were more recent than 2004, she did not explain why the lack of a more recent Bender Gestalt test was relevant. For example, Dr. Morrow-White left unanswered the question as to whether Plaintiff's condition could be expected to improve with time. Without such an explanation, the Court fails to see why a lack of a more recent Bender Gestalt test is relevant. Further, without any explanation from Dr. Morrow-White, Dr. Kravitz, or the ALJ, the Court fails to see why the Bender Gestalt test establishes less than moderate limitations. Accordingly, the case must be remanded for further factfinding, analysis, and articulation by the ALJ.

### B. THE ALJ'S DUTY TO DEVELOP THE RECORD

Plaintiff also contends that the ALJ failed to fully develop the record. ECF Dkt. #14 at 10. Specifically, Plaintiff contends that the ALJ failed to obtain a teacher's report, which Dr. Morrow-White confirmed may be helpful. *Id*. It is true that "[t]he ALJ has a basic obligation to develop a full and fair record, even if a claimant is represented by counsel or has waived his right to counsel." *Thomas v. Schweiker*, 557 F.Supp. 580, 582 (S.D.Ohio 1983). In this case, however, the ALJ explicitly asked Plaintiff's lawyer, who has since been replaced, to obtain questionnaires from Harris' teachers. Tr. at 448. Plaintiff's counsel agreed to do so. *Id*. The ALJ further instructed Plaintiff's counsel to seek an extension if he was unable to obtain the evidence. *Id*. Apparently, Plaintiff's counsel never obtained the questionnaires from Harris' teachers. Based upon the exchange between the ALJ and Plaintiff's attorney, the Court fails to see that the ALJ has erred in

-7-

this regard.  Obtaining the teacher's reports was clearly incumbent upon Plaintiff's counsel, and those records were never presented.  The ALJ was entitled to issue a decision based upon the existing evidence because he cannot be expected to keep the administrative record open indefinitely, especially where counsel explicitly agreed to undertake the task of supplementing the record.  *See Rodgers v. Sullivan*, Case No. 87 C 1014, 1990 WL 51740 at *2 (N.D.Ill., Apr. 19, 1990), unreported ("We note that an ALJ is not required to keep a record open forever in anticipation of medical evidence that may or may not be forthcoming.").  Accordingly, the Court finds that the ALJ did not err in regard to developing the record.

## V.      CONCLUSION

For the foregoing reasons, the Court REVERSES the ALJ's decision IN PART and REMANDS the  the instant case for further factfinding, analysis, and articulation regarding Harris' Bender Gestalt testing.  The Court AFFIRMS the ALJ's decision in all other respects.

IT IS SO ORDERED.

DATE:  October 21, 2008                          */s/George J. Limbert*
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE